Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
Audra M. Mori, Bar No. 162850
AMori@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Attorneys for Plaintiff
MICROSOFT CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>             Plaintiff and<br>             Counter-Defendant,<br><br>    v.<br><br>MY CHOICE SOFTWARE, LLC, a California limited liability company; and NATHAN MUMME, an individual,<br><br>             Defendants and<br>             Counterclaimants. | Case No. 8:16-cv-2187 DOC-KES<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF AND COUNTER-DEFENDANT MICROSOFT CORPORATION'S MOTION TO SEVER AND TRANSFER OR DISMISS COUNTERCLAIMS**<br><br>Date:      January 22, 2018<br>Time:     8:30 a.m.<br>Ctrm:    9D<br>Judge:   The Hon. David O. Carter |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION...................................................................................1

II.  BACKGROUND....................................................................................1

    A.  The Parties....................................................................................1

        1.  Microsoft...........................................................................1

        2.  Defendants Mumme and My Choice...........................................1

    B.  Microsoft's Claims........................................................................2

    C.  Defendants' Counterclaims.............................................................2

        1.  The Microsoft Partner Network Agreement..............................3

        2.  Termination of the Agreement .................................................4

        3.  Microsoft's Alleged Breach of the Agreement .........................4

III.  ARGUMENT .......................................................................................5

    A.  The Counterclaims Should Be Severed and Transferred to the
        Western District of Washington.......................................................5

        1.  Applicable Standard...............................................................5

        2.  The Forum Selection Clause Is Valid and Enforceable ............7

            a.  The Forum Selection Clause Is Enforceable and
               Applies to Defendants' Counterclaims ...........................7

            b.  The Forum Selection Clause Is Not Unreasonable
               or Unjust...................................................................9

            c.  The Public Interest Factors Are Neutral........................ 10

        3.  Severing the Counterclaims Promotes Fairness and Does
            Not Undermine Judicial Economy ........................................ 12

    B.  In the Alternative, the Counterclaims Should Be Dismissed for
        Failure to State a Claim................................................................ 14

        1.  Applicable Standard............................................................. 14

        2.  Each Counterclaim Is Subject to Dismissal for Failure to
            State a Claim...................................................................... 15

            a.  Breach of Contract.................................................... 15

            b.  Breach of the Duty of Good Faith and Fair Dealing...... 16

137842127.3

**TABLE OF CONTENTS**
**(continued)**

Page

c.  Intentional Misrepresentation ........................................ 17

   (i)  Defendants Have Not Suffered Any Damage ...... 17

   (ii)  Defendants' Allegations Are Insufficient Under Rule 9(b) ................................................ 18

   (iii)  Defendants' Knowledge and Intent Allegations Are Conclusory ................................ 18

d.  Negligent Misrepresentation ......................................... 19

   (i)  Defendants Have Not Suffered Any Damage ...... 19

   (ii)  Defendants Fail to State a Claim ........................ 19

e.  Intentional and Tortious Interference with a Prospective Advantage ................................................ 20

f.  Unfair Competition under California Business and Professions Code § 17200 ............................................. 21

g.  False Advertising under the Lanham Act ...................... 23

h.  False Advertising under California Business and Professions Code § 17500 ............................................. 24

3.  Leave to Amend Should Be Denied for All Causes of Action Based on the Termination of the Agreement ................ 25

IV.  CONCLUSION ........................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,
 158 Cal. App. 4th 226 (2007) ............................................................. 19

Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.,
 378 F. App'x 652 (9th Cir. 2010) ........................................................ 24

Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ................................................................... 14, 20

Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.,
 ___ F. Supp. 3d ___, No. 16-CV-469-WMC, 2017 WL 3207061
 (W.D. Wis. July 28, 2017) ..................................................................... 7

Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.,
 __ U.S. __, 134 S. Ct. 568 (2013) .................................... 6, 7, 11, 12

Badgett v. Security State Bank,
 807 P.2d 356 (Wash. 1991) ........................................................... 8, 16

Bell Atl. Corp. v. Twombly,
 550 U.S. 544 (2007) ........................................................................... 14

Branch v. Tunnell,
 14 F.3d 449 (9th Cir. 1994), overruled on other grounds by
 Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) ......... 3

Broadcom Corp. v. Sony Corp.,
 No. SACV161052JVSJCGX, 2016 WL 9108039 (C.D. Cal. Dec.
 20, 2016) ............................................................................................ 13

Burlington Ins. Co. v. Blind Squirrel, LLC,
 228 F. Supp. 3d 1160 (E.D. Wash. 2017) ........................................... 16

Carnival Cruise Lines v. Shute, Inc.,
 499 U.S. 585 (1991) ...................................................................... 5, 10

Chapman v. Skype Inc.,
 220 Cal. App. 4th 217 (2013) ............................................................. 17

-1-

Cleary v. News Corp.,
    30 F.3d 1255 (9th Cir. 1994) ......................................................................... 24

Coleman v. Quaker Oats Co.,
    232 F.3d 1271 (9th Cir. 2000) ......................................................................... 6

Das v. WMC Mortg. Corp.,
    831 F. Supp. 2d 1147 (N.D. Cal. 2011) .................................................. 14, 18

Daugherty v. Am. Honda Motor Co.,
    144 Cal. App. 4th 824 (2006) ....................................................................... 21

Davidson v. Kimberly-Clark Corp.,
    873 F.3d 1103 (9th Cir. 2017) ...................................................................... 14

Decker Coal Co. v. Commonwealth Edison Co.,
    805 F.2d 834 (9th Cir. 1986) .......................................................................... 6

Della Penna v. Toyota Motor Sales, U.S.A., Inc.,
    11 Cal. 4th 376 (1995) .................................................................................. 20

Diabetes Research Restitution, LLC v. Katz,
    No. LACV1009507JAKPLAX, 2011 WL 13046849 (C.D. Cal.
    Dec. 9, 2011) ................................................................................................ 25

Docksider, Ltd. v. Sea Tech., Ltd.,
    875 F.2d 762 (9th Cir. 1989) .......................................................................... 5

Eclectic Props. E., LLC v. Marcus & Millichap Co.,
    751 F.3d 990 (9th Cir. 2014) ........................................................................ 18

Gamble v. Pac. Nw. Reg'l Concil of Carpenters,
    No. C14-0455RSM, 2015 WL 3442561 (W.D. Wash. May 28,
    2015) ............................................................................................................. 16

Gemini Capital Grp., Inc. v. Yap Fishing Corp.,
    150 F.3d 1088 (9th Cir. 1998) ...................................................................... 10

Hansen Beverage Co. v. Innovation Ventures, LLC,
    No. 08-CV-1166-IEG (POR), 2009 WL 10672011 (S.D. Cal. Dec.
    30, 2009) ......................................................................................................... 7

Hawkins v. Gerber Prods. Co.,
    924 F. Supp. 2d 1208 (S.D. Cal. 2013) .......................................................... 6

137842127.3

Hickcox-Huffman v. US Airways, Inc.,
    855 F.3d 1057 (9th Cir. 2017) ........................................................ 8, 16

Intershop Commc'ns AG v. Superior Court,
    104 Cal. App. 4th 191 (2002) ............................................................ 10

Johnson v. Riverside Healthcare Sys., LP,
    534 F.3d 1116 (9th Cir. 2008) ............................................................ 14

Jones v. GNC Franchising, Inc.,
    211 F.3d 495 (9th Cir. 2000) ................................................................ 6

Klamath Water Users Protective Ass'n v. Patterson,
    204 F.3d 1206 (9th Cir. 1999) ........................................................... 7, 8

Korea Supply Co. v. Lockheed Martin Corp.,
    29 Cal. 4th 1134 (2003) ................................................................. 20, 21

Krish v. Balasubramaniam,
    No. 1:06-CV-01030 OWW TAG, 2007 WL 1219281 (E.D. Cal.
    Apr. 25, 2007) ..................................................................................... 11

Lockman Found. v. Evangelical All. Mission,
    930 F.2d 764 (9th Cir. 1991) .............................................................. 11

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972) ............................................................................... 5, 9

Manetti-Farrow, Inc. v. Gucci Am., Inc.,
    858 F.2d 509 (9th Cir. 1988) .......................................................... 7, 8, 9

McNeely v. Wells Fargo Bank, N.A.,
    No. SACV 11-01370 DOC, 2011 WL 6330170 (C.D. Cal. Dec. 15,
    2011) ................................................................................................... 22

Microsoft v. My Choice Software LLC,
    No. 8:15-cv-00515-DOC-RNB (C.D. Cal.) ......................................... 2

Minh Hong v. Morgan Stanley & Co., LLC,
    No. C12-01756 TEH, 2012 WL 5077066 (N.D. Cal. Oct. 18, 2012) ............... 11

Monje v. Spin Master, Inc.,
    No. CV-09-1713(PHX)(GMS), 2013 WL 6498073 (D. Ariz. Dec.
    11, 2013) ............................................................................................. 12

-3-

Murphy v. Schneider Nat'l, Inc.,
  362 F.3d 1133 (9th Cir. 2004).............................................................. 5, 9

N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.,
  69 F.3d 1034 (9th Cir. 1995).................................................................. 5

Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.,
  899 P.2d 6 (Wash. Ct. App. 1995) ..................................................... 15, 16

Oster v. OneWest Bank, F.S.B.,
  No. EDCV1200645MMMRZX, 2013 WL 12248149 (C.D. Cal.
  Jan. 16, 2013)........................................................................................ 18

Paduano v. Express Scripts, Inc.,
  55 F. Supp. 3d 400 (E.D.N.Y. 2014).................................................. 7, 12

Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.,
  No. 14-cv-00796-JST, 2014 WL 4674666 (N.D. Cal. Sept. 15,
  2014)....................................................................................................... 11

Piper Aircraft Co. v. Reyno,
  454 U.S. 235 (1981) ............................................................................... 13

Rice v. Charles Schwab,
  No. SACV 10-00398-CJC(MLGx), 2010 WL 5156654 (C.D. Cal.
  Oct. 22, 2010)........................................................................................ 18

Russell v. De Los Suenos,
  No. 13-CV-2081-BEN (DHB), 2014 WL 1028882 (S.D. Cal. Mar.
  17, 2014)................................................................................................. 10

Schreiber Distrib. Co. v. Serv-Well Furniture Co.,
  806 F.2d 1393 (9th Cir. 1986)............................................................... 25

Silberg v. Anderson,
  50 Cal. 3d 205 (1990).......................................................................... 17, 22

Somerville v. Stryker Orthopedics,
  No. C 08-02443 JSW, 2009 WL 2901591 (N.D. Cal. Sept. 4, 2009)............... 21

Southland Sod Farms v. Stover Seed Co.,
  108 F.3d 1134 (9th Cir. 1997)............................................................... 23

137842127.3

Steveson v. United Subcontractors, Inc.,
    No. C08-5558FDB, 2008 WL 5114270 (W.D. Wash. Dec. 2, 2008) ................ 16

Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,
    971 F.2d 401 (9th Cir. 1992) ............................................................................ 17

Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.,
    215 F.R.D. 621 (D. Kan. 2003) ........................................................................... 6

United States v. Ritchie,
    342 F.3d 903 (9th Cir. 2003) ............................................................................... 3

United Tactical Sys., LLC v. Real Action Paintball, Inc.,
    143 F. Supp. 3d 982 (N.D. Cal. 2015) ............................................................... 20

Van Egmond v. Wells Fargo Home Mortg.,
    No. SACV 12-0112 DOC (MLGx), 2012 WL 1033281 (C.D. Cal.
    Mar. 21, 2012) ..................................................................................................... 2

Vess v. Ciba Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ........................................................ 14, 18, 21, 24

Waste & Compliance Mgmt., Inc. v. Stericycle, Inc.,
    No. 17 cv 0967 DSM (NLS), 2017 WL 4358145 (S.D. Cal. Oct. 2,
    2017) ............................................................................................................ 14, 23

Wilson v. Hewlett-Packard Co.,
    668 F.3d 1136 (9th Cir. 2012) ........................................................................... 19

**STATUTES**

15 U.S.C. § 1125(a)(1)(B) ...................................................................................... 23

18 U.S.C. § 1125(a) ................................................................................................ 23

28 U.S.C. § 1404(a) ..................................................................................... 6, 7, 11, 12

Cal. Bus. & Prof. Code § 17200 ..................................................................... passim

Cal. Bus. & Prof. Code § 17500 ..................................................................... 14, 24

**RULES**

Fed. R. Civ. P. 8 ...................................................................................................... 18

137842127.3

Fed. R. Civ. P. 8(a) ............................................................................. 14

Fed. R. Civ. P. 9 ............................................................... 15, 18, 23, 24

Fed. R. Civ. P. 9(b) ................................................... 14, 17, 18, 21

Fed. R. Civ. P. 12(b)(6) ............................................................... 14

Fed. R. Civ. P. 21 .......................................................... 6, 7, 12

137842127.3

## I.    INTRODUCTION

Plaintiff and Counter-Defendant Microsoft Corporation's ("Microsoft") claims arise out of the distribution of counterfeit, infringing and illicit Microsoft software and components by Defendants and Counterclaimants My Choice Software, LLC, and Nathan Mumme's (collectively, "Defendants").  See Second Amended Complaint ("SAC") (Dkt. # 34).  After filing a motion dismiss, that the Court denied as to all but one claim which Microsoft successfully repleaded, Defendants answered and then a few weeks later asserted nine sparsely pleaded and convoluted counterclaims.  Defendants' counterclaims center on Microsoft's termination of Defendants' Microsoft Partner Network Agreement.  See Countercl. (Dkt. # 39).  Because the termination was in accordance with the terms of the agreement, and the agreement contains a forum selection clause mandating that any claims be filed in King County, Washington, the counterclaims, in addition to being insufficiently pled, were improperly filed in this Court.  Accordingly, Microsoft moves to sever the counterclaims and transfer them to the Western District of Washington or, in the alternative, to dismiss the counterclaims for failure to state a claim.

## II.    BACKGROUND

**A.    The Parties**

### 1.    Microsoft

Microsoft develops, advertises, markets, distributes and licenses a number of computer software programs.  SAC ¶ 8.  Microsoft owns and has registered copyrights in those software programs.  Id.  ¶¶ 10-13.  Microsoft also owns the registrations for the trademarks associated with those programs.  Id. ¶ 14.

### 2.    Defendants Mumme and My Choice

This is Microsoft's second action in this Court against My Choice arising out of My Choice's advertisement, sale and distribution of unauthorized and infringing

-1-

137842127.3

Microsoft software.  See Microsoft v. My Choice Software LLC,

No. 8:15-cv-00515-DOC-RNB (C.D. Cal.).  Despite the entry of a stipulated

permanent injunction in which My Choice agreed to cease its infringement, see id.,

Dkt. # 35, Defendants have continued their infringing activities by offering and

distributing unauthorized and infringing copies of purported Microsoft software by

Internet download, see generally SAC.  Mr. Mumme owns and serves as Chief

Executive Officer of My Choice.  Countercl. ¶¶ 1-2.

## B.    Microsoft's Claims

Microsoft filed this lawsuit on December 9, 2016, see generally Compl. (Dkt.

# 1), and filed the operative second amended complaint on October 30, 2017, see

generally SAC.  Microsoft's claims arise out of Defendants' distributions of

unauthorized, infringing and illicit Microsoft software.  See SAC ¶¶ 14-42.

Microsoft asserts claims for copyright infringement, trademark infringement,

violation of the Anti-Counterfeiting Amendments Act and unfair and deceptive

business practices.  See generally id.

## C.    Defendants' Counterclaims

On November 27, 2017, Defendants filed counterclaims against Microsoft

for breach of contract; breach of the covenant of good faith and fair dealing;

intentional misrepresentation; negligent misrepresentation; intentional interference

with prospective advantage; tortious interference with prospective advantage; unfair

competition; and false advertising.  See Countercl. ¶¶ 24-97.  The counterclaims all

arise out of an agreement entered into by My Choice and Microsoft, the Microsoft

Partner Network Agreement ("the Agreement").  Id. ¶ 9; see generally the

Agreement attached as Exhibit A to the Declaration of Katherine M. Dugdale

("Dugdale Decl."), pp. 3-36.[1]  "The Managed Partner Network ("MPN") is

---

[1]  In conjunction with its Motion, Microsoft provides copies of the Agreement and a June 2, 2017, notice ("the Notice") that Microsoft sent to Defendants.  See generally Dugdale Decl., Ex. A, pp. 3-36; Dugdale Decl., Ex. B, p. 37.  Defendants' counterclaims incorporate those documents by reference.  See Van Egmond v.

designed to help qualified technology companies build, sell, provide, service, and support solutions for their customers based on Microsoft technologies."  Dugdale Decl., Ex. A, p. 3 (Agreement § 1).

### 1.    The Microsoft Partner Network Agreement

As a member of the MPN, My Choice had access to certain benefits, id. at 5-8 (§ 5), in exchange for My Choice's promise to, inter alia, comply with the specified laws and Microsoft Partner Code of Conduct, id. at 19 (§ 14).  On 30 calendar days' notice, Microsoft or My Choice could terminate the Agreement without cause.  Id. at 12 (§ 8(c)).  The Agreement also outlines the circumstances that justify and procedures to be followed for a termination of the Agreement for cause.  Id. at 12 (§ 8(d)).  For example, a breach of the Microsoft Partner Code of Conduct constitutes cause and allows immediate termination of the Agreement.  Id. at 12, 19 (§§ 8(d)(1)(iv), 14(d)(3)).  Additionally, Microsoft may terminate the Agreement immediately if the member infringes, misuses or misappropriates Microsoft's intellectual property.  Id. at 12 (§ 8(d)(1)(v)).  In the event of a curable breach, the non-breaching party can terminate the Agreement after providing 30 calendar days' emailed or written notice and an opportunity to cure the breach.  Id. at 12 (§ 8(d)(3)).

The Agreement also contains choice-of-law (Washington) and forum selection clauses.  Id. at 16-17 (§ 14(c)(1)).  Where federal jurisdiction exists, the

---

Wells Fargo Home Mortg., No. SACV 12-0112 DOC (MLGx), 2012 WL 1033281, at *2 n.2 (C.D. Cal. Mar. 21, 2012).  The Court may, in its discretion, treat a document as incorporated by reference if Defendants "refer[] extensively to the document or the document forms the basis of the [Defendants'] claim."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see also Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1121 (9th Cir. 2002).  Defendants repeatedly reference the Agreement and Notice, see Countercl. ¶¶ 9, 15, 24, 37, and those documents form the basis of Defendants' counterclaims, see infra § III.B.2.

137842127.3

parties consent to "exclusive jurisdiction and venue in the federal courts in King County, Washington," i.e., the United States District Court for the Western District of Washington.  Id.

### 2.    Termination of the Agreement

On June 2, 2017, Microsoft provided notice to My Choice that due to "unauthorized use or distribution of Microsoft products," it would terminate My Choice's MPN membership "30 days following the date of" the Notice, "unless these matters [were] resolved to Microsoft's satisfaction" within 30 days. Countercl. ¶ 15; see Dugdale Decl., Ex. B, p. 37.  The Notice requested that Mr. Mumme and My Choice acknowledge receipt.  Dugdale Decl., Ex. B, p. 37.  On July 6, 2017, after the expiration of the 30-day period, Mr. Mumme sent a letter to Microsoft requesting greater specificity as to Microsoft's reason for terminating My Choice's membership in the MPN.  Countercl. ¶ 16.  Defendants do not allege that they resolved the matters to Microsoft's satisfaction within 30 days of the notice. Because My Choice did not resolve or even respond to the matter during the 30-day period and Microsoft could terminate for any reason on 30 days' notice, Microsoft terminated the Agreement.[2]

### 3.    Microsoft's Alleged Breach of the Agreement

Defendants contend Microsoft breached the Agreement by:  "among other things, accusing MyChoice of knowingly selling infringing Microsoft software that was not genuine and *using that baseless accusation as grounds to terminate MyChoice's membership in the MPN*. . . Microsoft also breached the Agreement by *failing to ensure that MPN members such as MyChoice can purchase from Microsoft's approved vendor list* without concern that it will face infringement claims or allegations of selling software that is not a genuine Microsoft product."

---

[2]  Microsoft could also have terminated for cause based on Defendants' infringement.  Under the Agreement, termination for cause does not require a 30-day notice period.  See Dugdale Decl., Ex. A, p. 12 (Agreement § 8(d)(1)(v)).

137842127.3

Id. ¶ 28 (emphases added).  Each of the nine counterclaims hinges on one or both of these alleged breaches:  terminating My Choice's MPN membership and misrepresenting the accuracy of the "approved vendor list."  See id. ¶¶ 24-97.  Accordingly, Defendants' contract-based counterclaims are separate and distinct from Microsoft's claims of copyright and trademark infringement and unfair business practices.

## III.    ARGUMENT

### A.    The Counterclaims Should Be Severed and Transferred to the Western District of Washington

In light of the Agreement's forum selection clause and the lack of overlap between Microsoft's claims and Defendants' counterclaims, Defendants' counterclaims should be severed and transferred to the Western District of Washington.

### 1.    Applicable Standard

It is well-settled that contractual forum selection clauses are presumptively valid and should be enforced unless a claimant shows that enforcement would be "unreasonable" under the circumstances.  Carnival Cruise Lines v. Shute, Inc., 499 U.S. 585, 593-95 (1991) (upholding the validity of a forum selection clause in a form contract); Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989) (holding that "where venue is specified with mandatory language the clause will be enforced").[3]  Defendants bear a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 17 (1972); see also Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004).

---

[3]  The use of the word "exclusive" along with the specification of the courts within King County, Washington makes the forum selection clause mandatory.  See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995) ("To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.").

137842127.3

1    In determining whether to transfer, courts typically consider the factors set

2  forth in 28 U.S.C. § 1404(a).[4]  However, the "presence of a valid forum selection

3  clause requires district courts to adjust their usual § 1404(a) analysis" because a

4  forum selection clause "represents the parties' agreement as to the most proper

5  forum."  Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.,

6  __ U.S. __, 134 S. Ct. 568, 581 (2013).  The party defying the forum selection

7  clause bears "the burden of establishing that transfer to the forum for which the

8  parties bargained is unwarranted."  Id.  The Court "should not consider arguments

9  about the parties' private interests" and "must deem the private-interest factors to

10  weigh entirely in favor of the preselected forum."  Id. at 582.  This leaves only the

11  public-interest factors as considerations that might weigh against transfer.

12  However, because public-interest factors "will rarely defeat a transfer motion, the

13  practical result is that forum-selection clauses should control except in unusual

14  cases."  Id.

15    Courts have broad discretion to sever claims in the interest of avoiding

16  prejudice to the parties and promoting judicial economy.  Fed. R. Civ. P. 21;

17  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1297 (9th Cir. 2000).  "Rule 21

18  applies when the claims asserted do not arise out of the same transaction or

19  occurrence or do not present some common question of law or fact."  Tab Exp.

20  Int'l, Inc. v. Aviation Simulation Tech., Inc., 215 F.R.D. 621, 623 (D. Kan. 2003).

21  "In deciding whether to grant severance, courts ordinarily consider basic principles

22

23  _____

[4] These are "(1) the plaintiff's choice of forum; (2) convenience of the parties;
24  (3) convenience of the witnesses; (4) relative ease of access to the evidence;
(5) familiarity of each forum with the applicable law; (6) feasibility of
25  consolidation with other claims; (7) any local interest in the controversy; and (8) the
relative court congestion and time to trial in each forum."  Hawkins v. Gerber
26  Prods. Co., 924 F. Supp. 2d 1208, 1213 (S.D. Cal. 2013); see also Jones v. GNC
Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  Factors one through four
27  are typically referred to as the private-interest factors, and factors five through eight
are referred to as public-interest factors.  See Decker Coal Co. v. Commonwealth
28  Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

of fundamental fairness and judicial economy, as well as possible prejudice to any party, undue delay, threats of duplicitous litigation, inconsistent jury verdicts, and factual and legal confusion." Hansen Beverage Co. v. Innovation Ventures, LLC, No. 08-CV-1166-IEG (POR), 2009 WL 10672011, at *1 (S.D. Cal. Dec. 30, 2009). "When a party's motion to sever and transfer is principally based on a forum selection clause," however, "courts have merged the relevant analyses under Rule 21 and 28 U.S.C. § 1404(a)." Ashley Furniture Indus., Inc. v. Packaging Corp. of Am., ___ F. Supp. 3d ___, No. 16-CV-469-WMC, 2017 WL 3207061, at *3 (W.D. Wis. July 28, 2017); see also Paduano v. Express Scripts, Inc., 55 F. Supp. 3d 400, 431-32 (E.D.N.Y. 2014).

### 2. The Forum Selection Clause Is Valid and Enforceable

This is not the unusual case in which the public-interest factors defeat a transfer motion. See Atl. Marine, 134 S. Ct. at 581. The forum selection clause should be enforced.

#### a. The Forum Selection Clause Is Enforceable and Applies to Defendants' Counterclaims

Defendants concede that the Agreement is "written, binding, and enforceable." Countercl. ¶ 25. The forum selection clause provides the "[a]pplicable . . . jurisdiction and venue for th[e] Agreement." Dugdale Decl., Ex. A, p. 16 (Agreement § 14(c)). The Agreement provides that where "federal jurisdiction exists, the parties consent to exclusive jurisdiction and venue in the federal courts in King County, Washington." Id., pp. 16-17 (§ 14(c)(1)).

Federal law governs the interpretation of forum selection clauses. Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988). When interpreting a contract under federal law, courts within the Ninth Circuit look for guidance "to general principles for interpreting contracts." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999). Those principles counsel that "[c]ontract terms are to be given their ordinary meaning, and

1    when the terms of a contract are clear, the intent of the parties must be ascertained

2    from the contract itself." Id.  Whether a forum selection clause governing the

3    contract extends to tort claims "depends on whether resolution of the [tort] claims

4    relates to interpretation of the contract." Manetti-Farrow, 858 F.2d at 513.

5         Defendants' counterclaims arise out of and require interpretation of the

6    Agreement.  The first cause of action alleges Microsoft breached the Agreement by

7    (1) terminating My Choice's membership in the MPN; and (2) "failing to ensure

8    that MPN members such as MyChoice can purchase from Microsoft's approved

9    vendor list without concern that [they] will face infringement claims." Countercl.

10   ¶ 28.  In other words, Defendants interpret the Agreement to proscribe two of

11   Microsoft's alleged actions:  terminating My Choice's MPN membership and

12   failing to maintain an accurate approved vendor list.

13        The other eight counterclaims expressly rely on one or both of these actions:

14   • Defendants' second cause of action is for breach of the duty of good faith

15        and fair dealing.  Id. ¶ 34.  This duty exists "only in relation to

16        performance of a specific contract term." Badgett v. Security State Bank,

17        807 P.2d 356, 360 (Wash. 1991); see also Hickcox-Huffman v. US

18        Airways, Inc., 855 F.3d 1057, 1066 (9th Cir. 2017) (noting that the

19        implied covenant of good faith and fair dealing "is merely an aid to

20        interpreting the terms of a contract").  The alleged breaches of this duty

21        are identical to the alleged breaches of the Agreement.  See Countercl.

22        ¶¶ 34-36.

23   • The alleged misrepresentation underlying Defendants' third and fourth

24        causes of action is "that Microsoft's approved vendor list contains

25        vendors that have all been approved." Id. ¶¶ 40, 48.

26   • The alleged interference supporting Defendants' fifth and sixth causes of

27        action is the termination of Microsoft's membership in the MPN.  Id.

28        ¶¶ 55, 61.

-8-

- Defendants' allegations regarding their seventh cause of action—unfair business practices—incorporate Defendants' other counterclaims, id. ¶¶ 69(a)-(d), and refer to terminating Defendants' membership in the MPN, id. ¶ 70.

- The alleged false advertising supporting Defendants' eighth and ninth causes of action is Microsoft's alleged representation that the vendors on its approved vendor list sell genuine Microsoft products.  Id. ¶¶ 84, 93.

These counterclaims "cannot be adjudicated without analyzing whether the parties" complied with the Agreement.  Manetti-Farrow, 858 F.2d at 513; see also id. at 511, 514 (concluding that a forum selection clause that covered controversies "regarding interpretation or fulfillment" of the contract applied to tort claims for conspiracy to interfere with contractual relations, conspiracy to interfere with prospective economic advantage, tortious interference with contractual relations, tortious interference with prospective economic advantage, breach of the implied covenant of good faith and fair dealing, and unfair trade practices).  Thus, although the forum selection clause is "for th[e] Agreement," Dugdale Decl., Ex. A, p. 16 (Agreement § 14(c)), it applies to all of Defendants' counterclaims.

### b.    The Forum Selection Clause Is Not Unreasonable or Unjust

A forum selection clause should be enforced unless enforcement would be unreasonable or unjust.  M/S Bremen, 407 U.S. at 17-18.  It is unreasonable to enforce a forum selection clause only "(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought."  Murphy, 362 F.3d at 1140.  A plaintiff must make a "strong showing" to overcome the presumption of enforceability that attaches to forum selection clauses.  M/S Bremen, 407 U.S. at 15.

-9-

137842127.3

1         Defendants concede that the Agreement is "written, binding, and

2 enforceable."  Countercl. ¶ 25.  Defendants do not allege that the forum selection

3 clause was the product of fraud or overreaching.  Furthermore, litigating the

4 counterclaims in Washington would not deprive Defendants of their day in court.

5 See, e.g., Russell v. De Los Suenos, No. 13-CV-2081-BEN (DHB), 2014 WL

6 1028882, at *6-7 (S.D. Cal. Mar. 17, 2014) (finding that the plaintiffs would not be

7 deprived of their day in court in Mexico, despite evidence of lengthy delays,

8 differences in the presentation of evidence, difficulties in compelling witnesses, a

9 "nominally independent" and potentially corrupt judiciary, no right to a jury, and

10 difficulties in enforcing judgments).  In addition, enforcing the forum selection

11 clause comports with California's public policy.  See Intershop Commc'ns AG v.

12 Superior Court, 104 Cal. App. 4th 191, 196 (2002) ("The California Supreme Court

13 has held that contractual forum selection clauses are valid and should be given

14 effect unless enforcement of the clause would be unreasonable.").  Finally, hearing

15 the counterclaims in the Western District of Washington is fair because there is a

16 connection between Washington and the parties; indeed, it is Microsoft's domicile.

17 See Carnival Cruise Lines, 499 U.S. at 595 (determining a forum selection clause

18 was fair where, among other things, venue was chosen where one contracting party

19 was located).

20        **c.**    **The Public Interest Factors Are Neutral**

21         Where, as here, a forum selection clause is valid and applicable, the analysis

22 looks only to the public interest factors:  "administrative difficulties flowing from

23 court congestion; imposition of jury duty on the people of a community unrelated to

24 the litigation; the local interest in resolving the controversy at home; the interest in

25 having a diversity case tried in a forum familiar with the law that governs the

26 action; and the avoidance of unnecessary conflicts of law problems."  Gemini

27 Capital Grp., Inc. v. Yap Fishing Corp., 150 F.3d 1088, 1094 (9th Cir. 1998).

28 "Only under extraordinary circumstances unrelated to the convenience of the

137842127.3

parties" should a court deny a Section 1404(a) motion that seeks to effectuate a valid forum selection clause.  Atl. Marine, 134 S. Ct. at 581.  There are no such extraordinary circumstances here, as the public interest factors are neutral.

The first public interest factor is neutral.  As measured by the median time between filing and trial for civil jury trials, for the 12-year period concluding June 30, 2017, the Western District of Washington and this district took an identical 20.5 months.  Dugdale Decl., Ex. C, p. 40; see Minh Hong v. Morgan Stanley & Co., LLC, No. C12-01756 TEH, 2012 WL 5077066, at *6 (N.D. Cal. Oct. 18, 2012) (finding the time-to-trial factor neutral where the difference between districts was less than four months).  Because Microsoft's claims and Defendants' counterclaims are separate and distinct, there would be minimal efficiency gains by retaining Defendants' counterclaims as part of this action.

The second and third factors are also neutral.  Given Microsoft's presence in the Western District of Washington, it will not place an undue or unexpected burden on the local court or jury to hear the case.  See Krish v. Balasubramaniam, No. 1:06-CV-01030 OWW TAG, 2007 WL 1219281, at *9 (E.D. Cal. Apr. 25, 2007) (rejecting the argument that a case would unfairly burden local courts or juries where the defendant was domiciled within the jurisdiction).  And, both this District and the Western District of Washington have an interest in the litigation: the Western District of Washington, because Microsoft is headquartered there and employs residents of that district; and the Central District of California, because it has an interest in ensuring its residents are compensated for alleged harms.  See Lockman Found. v. Evangelical All. Mission, 930 F.2d 764, 771 (9th Cir. 1991) (noting local interest in having citizens compensated for alleged torts); Pierce-Nunes v. Toshiba Am. Info. Sys., Inc., No. 14-cv-00796-JST, 2014 WL 4674666, at *6 (N.D. Cal. Sept. 15, 2014) (finding a greater interest in the location where the defendant had its headquarters and employed a substantial number of citizens, in a case involving allegations of false advertisement).

The fourth and fifth factors are neutral as well.  "[F]ederal judges routinely apply the law of a State other than the State in which they sit."  Atl. Marine, 134 S. Ct. at 584.  Moreover, the counterclaims implicate Washington, California, and federal law.  Thus, even if a federal district court is presumed to be especially familiar with forum state law, this Court and a court in the Western District of Washington are equally situated.  And in light of the choice-of-law provision, see Dugdale Decl., Ex. A, p. 16 (Agreement § 14(c)(1)), the conflicts of law problems in this case are minimal and do not favor one venue over the other.

No extraordinary circumstances justify denial of this motion to transfer.  "[T]he interest of justice is served by holding parties to their bargain."  Atl. Marine, 134 S. Ct. at 583.  Accordingly, the counterclaims should be transferred to the Western District of Washington.

### 3.    Severing the Counterclaims Promotes Fairness and Does Not Undermine Judicial Economy

When a party's motion to sever and transfer is principally based on a forum selection clause, courts merge the relevant analyses under Rule 21 and 28 U.S.C. § 1404(a).  In other words, if transfer is appropriate under Section 1404(a), "then severance, too, would be proper."  Paduano, 55 F. Supp. 3d at 431-32; see also Monje v. Spin Master, Inc., No. CV-09-1713(PHX)(GMS), 2013 WL 6498073, at *4 (D. Ariz. Dec. 11, 2013) ("Severance is a necessary precursor to . . . transfer, and it is justified by the same reasoning laid out [in connection with transfer].").  Here, severance is appropriate for the same reasons as transfer.

Consideration of the factors courts typically consider under Rule 21 confirms that severing the counterclaims is appropriate.  This District considers the following:  "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether severance would facilitate settlement of the claims or judicial economy; (4) whether severance would avoid prejudice; and (5) whether different witnesses and

137842127.3

1   documentary proof are required for the separate claims." <u>Broadcom Corp. v. Sony</u>

2   <u>Corp.</u>, No. SACV161052JVSJCGX, 2016 WL 9108039, at *2 (C.D. Cal. Dec. 20,

3   2016).

4        Here, avoiding prejudice operates most strongly.  The parties contractually

5   agreed to "exclusive jurisdiction and venue in the federal courts in King County,

6   Washington." Dugdale Decl., Ex. A, pp. 16-17 (Agreement § 14(c)(1)).  Declining

7   to sever and transfer the claims would contravene this bargained-for provision

8   merely because Microsoft exercised its right to file distinct, infringement-related

9   claims in the venue of its choice.  <u>See</u> <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235,

10  255 (1981) (acknowledging the deference due to a plaintiff's choice of forum in the

11  absence of a governing forum selection clause).

12       Consideration of the other factors does not warrant a different result.

13  Whereas Microsoft's claims arise out of Defendants' infringement of Microsoft's

14  copyrights and trademarks, Defendants' counterclaims arise out of the MPN and the

15  Agreement.  There is little factual overlap between Microsoft's claims and

16  Defendants' counterclaims.  <u>See</u> <u>Broadcom</u>, 2016 WL 9108039, at *3-4 (finding

17  that the second factor weighed in favor of severance despite the common identities

18  of the parties).  The claims and counterclaims are distinct and do not present

19  common legal questions.  And besides Mr. Mumme, there will be little overlap

20  between the witnesses and evidence relevant to Microsoft's infringement-related

21  claims and Defendants' counterclaims.  In light of these differences, severing

22  Defendants' counterclaims would facilitate judicial economy because the Court has

23  already ruled on the sufficiency of Microsoft's pleadings and can proceed to the

24  next phase of the case.

25  / / /

26  / / /

27  / / /

28  / / /

137842127.3

**B.** **In the Alternative, the Counterclaims Should Be Dismissed for Failure to State a Claim**

In the event the Court denies Microsoft's motion to sever and transfer Defendants' counterclaims, the counterclaims should be dismissed for failure to state a claim.

**1.** **Applicable Standard**

To state a claim, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This requires a party to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Dismissal under Rule 12(b)(6) is appropriate when the claimant either lacks a "cognizable legal theory" or has failed to present "sufficient facts alleged under a cognizable legal theory." Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008).

Where a claim is grounded in fraud, the allegations "must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." Davidson v. Kimberly-Clark Corp., 873 F.3d 1103, 1110 (9th Cir. 2017). As relevant here, Rule 9(b) applies to intentional misrepresentation claims, Das v. WMC Mortg. Corp., 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011), Section 17200 claims that sound in fraud, Vess v. Ciba Geigy Corp. USA, 317 F.3d 1097, 1103-05 (9th Cir. 2003), as well as false advertising claims under the Lanham Act, Waste & Compliance Mgmt., Inc. v. Stericycle, Inc., No. 17 cv 0967 DSM (NLS), 2017 WL 4358145, at *2 (S.D. Cal. Oct. 2, 2017) and Section 17500, Vess, 317 F.3d at 1102-04.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. Each Counterclaim Is Subject to Dismissal for Failure to State a Claim

Defendants' own allegations in the counterclaim regarding Microsoft's termination of the Agreement preclude, as a matter of law, their first six causes of action, as well as certain theories of the seventh cause of action. Either party to the Agreement had the right to terminate it "at any time, without cause, on 30 calendar days' notice." Dugdale Decl., Ex. A, p. 12 (Agreement § 8(c)). On June 2, 2017, Microsoft provided 30 days' notice to My Choice before terminating the Agreement. Countercl. ¶ 15; Dugdale Decl., Ex. B, p. 37; see also Countercl. ¶ 16 (indicating that Defendants did not respond to the Notice until July 6, 2017—more than 30 days after Microsoft sent it). Defendants' allegations conclusively demonstrate that Microsoft terminated the Agreement pursuant to its express terms. Microsoft did not breach the Agreement, and the termination cannot serve as the predicate for Defendants' contract or tort claims. These claims fail as a matter of law and should be dismissed with prejudice.

Additionally, several of the counterclaims, including the intentional misrepresentation, negligent misrepresentation, and false advertising causes of action, contain nothing more than a formulaic recitation of the elements of the causes of action. This is insufficient under the Iqbal/Twombly standard. Moreover, the intentional misrepresentation and false advertising causes of action, and some allegations in support of the Section 17200 cause of action, are subject to Rule 9's heightened pleaded standard. Defendants' allegations fall short of meeting that standard. All counterclaims should be dismissed.

#### a. Breach of Contract

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus., 899 P.2d 6, 9 (Wash. Ct. App. 1995). Defendants allege that Microsoft breached the Agreement by

-15-

1   (1) "baseless[ly]" terminating My Choice's MPN membership, and (2) "failing to

2   ensure that MPN members such as MyChoice can purchase from Microsoft's

3   approved vendor list without concern that it will face infringement claims or

4   allegations of selling software that is not a genuine Microsoft product."  Countercl.

5   ¶ 28.  With respect to the latter claim, no term in the Agreement mandates that

6   Microsoft ensure MPN members can purchase from the approved vendor list

7   without concern that they will face infringement allegations or claims.  See

8   generally Dugdale Decl., Ex. A, pp. 3-36 (Agreement).  As to Defendants'

9   "baseless termination" theory, the Agreement unequivocally provides for

10  termination without cause on 30 days' notice, id. at 12 (§ 8(c)), which Microsoft

11  provided, Countercl. ¶ 15.  There was no breach and Defendants' breach of contact

12  claim fails as a matter of law.  See, e.g., Steveson v. United Subcontractors, Inc.,

13  No. C08-5558FDB, 2008 WL 5114270, at *3 (W.D. Wash. Dec. 2, 2008)

14  (dismissing breach of contract claim for failure to state a claim where the

15  employment contract provided for at-will termination); Gamble v. Pac. Nw. Reg'l

16  Concil of Carpenters, No. C14-0455RSM, 2015 WL 3442561, at *4-5 (W.D. Wash.

17  May 28, 2015) (same).

18                    **b.      Breach of the Duty of Good Faith and Fair Dealing**

19          Defendants' counterclaim for breach of the duty of good faith and fair

20  dealing suffers from the same deficiencies as the breach of contract claim.  Under

21  Washington law, every contract includes an implied duty of good faith and fair

22  dealing.  Badgett, 807 P.2d at 360.  However, this duty exists "only in relation to

23  performance of a specific contract term."  Id.  "As a matter of law, there cannot be a

24  breach of the duty of good faith when a party simply stands on its rights to require

25  performance of a contract according to its terms."  Id.  In other words, there cannot

26  be a breach of the covenant of good faith and fair dealing without a breach of a

27  specific term in the contract.  Burlington Ins. Co. v. Blind Squirrel, LLC, 228

28  F. Supp. 3d 1160, 1169 (E.D. Wash. 2017); see also Hickcox-Huffman, 855 F.3d at

1066 (noting that the implied covenant of good faith and fair dealing "is merely an aid to interpreting the terms of a contract").  For the same reasons Defendants fail to state a claim for breach of contract, Defendants fail to state a claim for breach of the covenant of good faith and fair dealing.

### c.   Intentional Misrepresentation

"The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." Chapman v. Skype Inc., 220 Cal. App. 4th 217, 230-31 (2013).[5]  Defendants' intentional misrepresentation counterclaim should be dismissed because:  (1) Defendants have suffered no damages; (2) Defendants' allegations are insufficient to meet the Rule 9(b) pleading standard; and (3) Defendants fail to include non-conclusory allegations regarding Microsoft's intent.

### (i)   Defendants Have Not Suffered Any Damage

Microsoft's right to terminate the Agreement without cause also undermines Defendants' intentional misrepresentation counterclaim.  The damage alleged by Defendants in support of this claim is Microsoft's "unjust[] terminat[ion of] MyChoice's membership in the MPN."  Countercl. ¶ 44.  But Microsoft could terminate the Agreement on 30 days' notice—and it did.  Thus, Defendants' alleged damage isn't damage at all.  Moreover, to the extent Defendants allege damage arising from Microsoft's lawsuit for "infringing sales and solicitations," id., the litigation privilege immunizes Microsoft's conduct, see Silberg v. Anderson, 50

---

[5]  Washington law governs the Agreement.  Dugdale Decl., Ex. A, p. 16 (Agreement § 14(c)(1)).  However, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision." Sutter Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401, 407 (9th Cir. 1992).  In addition, Defendants assert several statutory counterclaims under California law.  Countercl. ¶¶ 64-82, 92-97.  Accordingly, Microsoft applies California law to the counterclaims that sound in tort.

137842127.3

Cal. 3d 205, 212 (1990).  Defendants fail to allege a cognizable theory of harm, and their misrepresentation counterclaim fails as a matter of law.

### (ii)   Defendants' Allegations Are Insufficient Under Rule 9(b)

In addition, Defendants' allegations fail to meet the Rule 9(b) pleading standard.  See Das, 831 F. Supp. 2d at 1166 (finding that Rule 9(b) applies to intentional misrepresentation claims).  Defendants assert that Microsoft misrepresented that its "approved vendor list contains vendors that have all been approved as selling authentic, genuine, and non-infringing Microsoft software products."  Countercl. ¶ 40; see also id. ¶¶ 12-13, 39, 47-48, 69(a)-(b), 84, 93 (alleging facts about the vendor list similarly devoid of detail).  But the when, where and how of the alleged misconduct is missing and there is no explanation of "what is false or misleading about [the] statement, and why it is false."  Vess, 317 F.3d at 1106.  Defendants' allegations are insufficient under Rule 9.

### (iii)   Defendants' Knowledge and Intent Allegations Are Conclusory

Defendants also fail to properly allege knowledge and intent.  Although allegations of knowledge and intent are not held to the Rule 9 standard, the Rule 8 plausibility standard applies.  See Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 995 (9th Cir. 2014).  Defendants merely assert that "[u]pon information and belief, Microsoft knew that the representation made to [Defendants] regarding vendors on Microsoft's approved vendor list was false" or made with reckless disregard for the truth, and that "Microsoft intended that [Defendants] rely, to [their] own detriment, on Microsoft's representation."  Countercl. ¶¶ 41-42.  These conclusory assertions do not satisfy Rule 8.  See Rice v. Charles Schwab, No. SACV 10-00398-CJC(MLGx), 2010 WL 5156654, at *3 (C.D. Cal. Oct. 22, 2010) (rejecting less conclusory allegations as insufficient to suggest knowledge); Oster v. OneWest Bank, F.S.B., No. EDCV1200645MMMRZX, 2013 WL 12248149, at *4 (C.D. Cal. Jan. 16,

1    2013) (rejecting "plaintiffs' conclusory assertion" of knowledge and intent, devoid

2    of "facts giving rise to an inference of knowledge of falsity or intent to defraud," as

3    "[in]sufficient to allege the second and third elements of an intentional

4    misrepresentation claim"); see also Wilson v. Hewlett-Packard Co., 668 F.3d 1136,

5    1146-47 (9th Cir. 2012) (rejecting "merely conclusory" allegations of knowledge).

6              **d.      Negligent Misrepresentation**

7         "The elements of negligent misrepresentation are (1) the misrepresentation of

8    a past or existing material fact, (2) without reasonable ground for believing it to be

9    true, (3) with intent to induce another's reliance on the fact misrepresented,

10   (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  Apollo

11   Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243

12   (2007).  This counterclaim fails for the same reasons as the intentional

13   misrepresentation counterclaim.

14              **(i)      Defendants Have Not Suffered Any Damage**

15        Like their intentional misrepresentation counterclaim, Defendants' negligent

16   misrepresentation counterclaim relies on damages resulting from the termination of

17   My Choice's MPN membership.  Countercl. ¶ 52.  As previously discussed,

18   Microsoft had a right to terminate the Agreement.  See Dugdale Decl., Ex. A, p. 12

19   (Agreement § 8(c)).  Thus, it is not plausible to infer that Microsoft's alleged

20   misrepresentations caused damage to Defendants.

21              **(ii)     Defendants Fail to State a Claim**

22        Defendants also fail to include non-conclusory allegations in support of

23   several other elements of their claim.  For example, they merely recite the second

24   and third elements of negligent misrepresentation.  SAC ¶¶ 49 ("On information

25   and belief, . . . Microsoft had no reasonable grounds for believing that the

26   representation was true when Microsoft made it."), 50 ("Upon information and

27   belief, Microsoft intended that Counter-Claimants rely, to its own detriment, on

28

Microsoft's representation . . . ."). Neither of these formulaic recitations satisfies the Iqbal/Twombly pleading standard. See Iqbal, 556 U.S. at 680-81.

### e.    Intentional and Tortious[6] Interference with a Prospective Advantage

"Under California law, the elements of a claim for intentional interference with prospective advantage are:  (1) an economic relationship with a third party which offered the probability of future economic benefit to plaintiff; (2) defendants' knowledge of this relationship; (3) defendants' intentional acts designed to disrupt that relationship; (4) actual disruption of the relationship; and (5) economic harm . . . proximately caused by defendants' acts." United Tactical Sys., LLC v. Real Action Paintball, Inc., 143 F. Supp. 3d 982, 1012 (N.D. Cal. 2015).  A party asserting intentional interference with a prospective advantage also "has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." Della Penna, 11 Cal. 4th at 393; see also Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1154 (2003) (clarifying that a party must "plead intentional *wrongful* acts . . . designed to disrupt the relationship").

Defendants' claim for intentional interference with prospective advantage fails because there has been no wrongful interference.  This claim is predicated on Microsoft's termination, without cause, of My Choice's MPN membership. Countercl. ¶¶ 55, 61.  However, far from constituting an independently wrongful act, the terms of the Agreement allow Microsoft to terminate the Agreement, thereby revoking My Choice's membership in the MPN.  See id. ¶¶ 15-16; Dugdale

---

[6]  California does not recognize separate torts for intentional interference with prospective advantage and tortious interference with prospective advantage.  See Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 381 n.2 (1995); United Tactical Sys., 143 F. Supp. 3d at 1012-13 & n.16.  Thus, Defendants' tortious interference with prospective advantage counterclaim fails for the same reasons as the intentional interference with prospective advantage counterclaim.

137842127.3

Decl., Ex. A, p. 12 (Agreement § 8(c)).  There was no wrongful interference and this claim should be dismissed.

### f.   Unfair Competition under California Business and Professions Code § 17200

Defendants next allege that Microsoft violated California's Unfair Competition Law, Countercl. ¶¶ 64-82, which "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts," Korea Supply Co., 29 Cal. 4th at 1143 (citing Cal. Bus. & Prof. Code § 17200 *et seq.*).  "[T]here are three varieties of unfair competition:  practices which are unlawful, unfair or fraudulent." Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 837 (2006).  Section 17200 borrows violations from other statutes for its "unlawful" prong, but a practice may be deemed "unfair" even if it is not unlawful.  Korea Supply Co., 29 Cal. 4th at 1143.  "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." Daugherty, 144 Cal. App. 4th at 839.  Finally, an act is fraudulent if "members of the public are likely to be deceived."  Somerville v. Stryker Orthopedics, No. C 08-02443 JSW, 2009 WL 2901591, at *2 (N.D. Cal. Sept. 4, 2009).

Liberally construed, Defendants assert seven "false, unfair and misleading business practices" without specifying which of those practices are false, which are unfair, and which are misleading.  Countercl. ¶ 69.  At least some of those alleged business practices sound in fraud, and the supporting allegations do not satisfy Rule 9(b).  See Vess, 317 F.3d at 1103-05 (disregarding deficiently alleged fraud allegations in support of a Section 17200 claim).

- The first four alleged business practices merely reassert the purported intentional misrepresentations, negligent misrepresentations, intentional interference, and tortious interference that Microsoft has addressed above. See Countercl. ¶¶ 69(a)-(d).  For the reasons stated above, the alleged

-21-

1    actions underlying those claims were lawful.  Moreover, there are no

2    allegations suggesting that those actions were unfair or fraudulent.  See

3    McNeely v. Wells Fargo Bank, N.A., No. SACV 11-01370 DOC, 2011

4    WL 6330170, at *4 (C.D. Cal. Dec. 15, 2011).

5    •  Although not a model of clarity, Defendants appear to allege that

6       Microsoft's selective use of the "activation technologies or Microsoft

7       Genuine" is false, unfair and misleading.  Countercl. ¶ 69(e).  To the

8       extent these allegations can be understood at all, there is nothing illegal,

9       unfair, or fraudulent about selective use of activation technologies.  And,

10      to the extent Defendants are complaining they are not caught each time

11      they distribute an infringing copy of Microsoft software, Defendants

12      could avoid harm by not attempting to deceive consumers.[7]

13   •  Defendants next allege:  "The fact that Microsoft'[s] activities related to

14      its failure to disclose material and relevant related information constitutes

15      violations of Business & Professions Code § 17200."  Id. ¶ 69(f).  To the

16      extent Defendants intend this allegation to assert an independent business

17      practice, it fails to state a claim because it is a conclusory assertion devoid

18      of factual support.  To the extent Defendants intended to incorporate the

19      preceding paragraphs, they fail to state an unfair business practice for the

20      same reasons discussed above.

21   •  Finally, Defendants contend that Microsoft "arbitrarily kick[s] legitimate

22      businesses . . . off the MPN."  Id. ¶ 70.  This allegation, however, relies

23      on the same flawed premise that Microsoft terminated the Agreement

24      wrongfully.

25

26

27   _____

     [7]  Defendants refer to the harm caused by Microsoft's underlying lawsuit for
28   infringement, but the litigation privilege immunizes that conduct.  Countercl. ¶ 81;
     Silberg, 50 Cal. 3d at 212.

1   Because none of the seven business practices Defendants identify are unlawful,

2   unfair, or fraudulent, Defendants' Section 17200 claim fails as a matter of law.

3                    **g.      False Advertising under the Lanham Act[8]**

4          The elements of a Lanham Act false advertising claim are: "(1) a false

5   statement of fact by the defendant in a commercial advertisement about its own or

6   another's product; (2) the statement actually deceived or has the tendency to

7   deceive a substantial segment of its audience; (3) the deception is material, in that it

8   is likely to influence the purchasing decision; (4) the defendant caused its false

9   statement to enter interstate commerce; and (5) the plaintiff has been or is likely to

10  be injured as a result of the false statement, either by direct diversion of sales from

11  itself to defendant or by a lessening of the goodwill associated with its products."

12  <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997); <u>see</u>

13  <u>also</u> 15 U.S.C. § 1125(a)(1)(B).  Rule 9 applies to Lanham Act false advertising

14  claims.  <u>Waste & Compliance Mgmt.</u>, 2017 WL 4358145, at *2.

15         Defendants' claim fails because they have not adequately identified the

16  allegedly false statement.  In support of this counterclaim, Defendants provide a

17  link to what they claim is an online version of Microsoft's "approved vendor list,"

18  Countercl. ¶ 84, but the link is to a list of companies that provide typography and

19  fonts, not a list of authorized Microsoft software resellers.  Dugdale Decl., Ex. D,

20  pp. 41-53.  Defendants fail to allege when, how, or to whom Microsoft represented

21  that this "vendor list" contains only approved vendors.  <u>Cf. id.</u> ¶ 13 (alleging that

22  Defendants "are further informed and believe, and hereupon allege, that a seller of

23  Microsoft software such as MyChoice must be entitled to reasonably rely on the

24  fact that a purchase from a vendor on Microsoft's approved vendor list will be a

25  purchase of genuine Microsoft software"), ¶ 28 (alleging that Microsoft "breached

26

27  ───────────────
    [8]  Although Defendants cite 18 U.S.C. § 1125(a), Countercl. at 16, the context
28  makes clear that they intend to cite 15 U.S.C. § 1125(a), <u>see id.</u> ¶ 89; 15 U.S.C.
    § 1125(a)(1)(B).

-23-

the Agreement by failing to ensure that MPN members such as MyChoice can purchase from Microsoft's approved vendor list without concern that it will face infringement claims or allegations of selling software that is not a genuine Microsoft product").[9]  In addition, Defendants do not allege deception, materiality, or injury, except in a conclusory fashion.  Id. ¶¶ 86-88.  Defendants' Lanham Act claim should be dismissed as deficiently pleaded.

### h.    False Advertising under California Business and Professions Code § 17500

False advertising claims brought under Section 17500 are "substantially congruent" to false advertising claims under the Lanham Act, Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994), and are governed by Rule 9's pleading standards, Vess, 317 F.3d at 1102-04.  Defendants' allegations in support of their Section 17500 counterclaim are similar to—and sparser than—their allegations in support of the Lanham Act.  Compare Countercl. ¶¶ 83-91, with id. ¶¶ 92-97.  Like the Lanham Act claim, the Section 17500 claim is based on statements regarding the vendor list.  Id. ¶ 93.  And like the Lanham Act claim, the Section 17500 claim is supported by only conclusory allegations of likelihood of deception, id. ¶ 94, and injury, id. ¶ 95.  Defendants' Section 17500 claim should be dismissed for the same reasons as the Lanham Act claim.  See Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc., 378 F. App'x 652, 656 (9th Cir. 2010) (affirming summary judgment on a Section 17500 claim "for the reasons explained . . . in connection with the [Lanham Act] claim").

/ / /

/ / /

/ / /

---

[9]  If the Court deems the "online vendor list" incorporated by reference, it is not a list of Microsoft authorized distributors.  The list appears to be a list of certain vendors of typography and font related services.  See Microsoft Typography, https://www.microsoft.com/typography/links/links.aspx?type=vendor&part=1 (cited at Countercl. ¶ 84; attached at Dugdale Decl., Ex. D, pp. 41-53).

### 3.    Leave to Amend Should Be Denied for All Causes of Action Based on the Termination of the Agreement

Notwithstanding the liberality with which leave to amend is granted, leave to amend should be denied if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).  As explained above, <u>see</u> <u>supra</u> § III.B.2.a-f., the allegations when considered with Section 8(c) of the Agreement demonstrate that Microsoft had the right and followed the proper procedure to terminate the Agreement.  Accordingly, Causes of Action 1 through 6, and several theories of under Cause of Action 7, are fundamentally and irredeemably flawed.  Defendants could not cure the deficiencies in those counterclaims with "other facts consistent with the challenged pleading" because the challenged pleading affirmatively demonstrates the failure of the counterclaims.  <u>Schreiber</u>, 806 F.2d at 1401; <u>see also</u> <u>Diabetes Research Restitution, LLC v. Katz</u>, No. LACV1009507JAKPLAX, 2011 WL 13046849, at *4 (C.D. Cal. Dec. 9, 2011) (denying leave to amend because the plaintiff's theory of its claim was "fundamentally flawed" in that one of the core elements was "impossible").  Thus, amendment would be futile and these claims should be dismissed with prejudice.

### IV.    CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court sever and transfer Defendants' counterclaims to the United States District Court for the Western District of Washington or, if the Court declines to sever and transfer, dismiss the counterclaims for failure to state a claim.

DATED:  December 18, 2017

**PERKINS COIE LLP**

By:/s/ Katherine M. Dugdale
   Katherine M. Dugdale, Bar No. 168014
   KDugdale@perkinscoie.com

Attorney for Plaintiff

137842127.3